# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

YUJIAO L.,[1]

                Petitioner,

      v.

Todd LYONS, Acting Director, Immigration and Customs Enforcement; Sergio ALBARRAN, Field Office Director of Enforcement and Removal Operations, San Francisco Field Office, Immigration and Customs Enforcement; Kristi NOEM, Secretary, U.S. Department of Homeland Security; U.S. DEPARTMENT OF HOMELAND SECURITY; Christopher CHESTNUT, Warden, California City Detention Facility; Joseph EDLOW, Director of the United States Citizenship and Immigration Services; Ted H. KIM, USCIS Associate Director for Refugee, Asylum and International Operations; Danielle LEHMAN, Director of the San Francisco Asylum Office; and Pamela BONDI, U.S. Attorney General; EXECUTIVE OFFICE FOR IMMIGRATION REVIEW,

                Respondents.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No.: 1:26-cv-00073-JLT-SKO (HC)

FINDINGS AND RECOMMENDATIONS TO GRANT PETITION FOR WRIT OF HABEAS CORPUS

[10-DAY OBJECTION DEADLINE]

---

[1] As recommended by the Committee on Court Administration and Case Management of the Judicial Conference of the United States, the Court omits petitioner's full name, using only his first name and last initial, to protect sensitive personal information. See Memorandum re: Privacy Concern Regarding Social Security and Immigration Opinions, Committee on Court Administration and Case Management, Judicial Conference of the United States (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf.

Petitioner Yujiao L. is an asylum-seeker from China proceeding with counsel with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.  After entry to the United States in November 2022, she was detained by immigration officials and then released pending her removal proceedings after officials determined that she was neither a danger nor a flight risk. On October 8, 2025, Immigration and Customs Enforcement ("ICE") agents re-detained Petitioner when she appeared for a scheduled check-in.

On January 5, 2026, Petitioner filed a petition for writ of habeas corpus and motion for temporary restraining order, in which she sought her immediate release from detention and an injunction prohibiting the Government from re-detaining her unless it first provides her with a hearing before a neutral adjudicator. (Docs. 1, 2.) On January 6, 2026, the District Court converted the motion for temporary restraining order into a motion for preliminary injunction and referred the matter to the undersigned for further proceedings. (Docs. 4, 5.) On January 9, 2026, Respondents filed an opposition to preliminary injunction and request for additional time to file a response. (Doc. 9.) On January 16, 2026, Petitioner filed a response to the opposition and an opposition to the motion for extension of time. (Doc. 11.) On January 26, 2026, Respondents filed a supplement to their opposition stating they have no opposition to expedited consideration of the petition. (Doc. 12.)

For the reasons explained below, the Court will recommend the petition be GRANTED.

## I.    BACKGROUND

Petitioner is a native and citizen of China who entered the United States without inspection on November 29, 2022. (Doc. 1 at ¶ 2.) She was released on her own recognizance.[2] (Doc. 1 at ¶ 2.)

On February 8, 2023, Petitioner filed for asylum. (Doc. 1 at ¶ 2.) Petitioner states her immigration case is currently pending without a future hearing date. (Doc. 1 at ¶ 2.)

---

[2] The regulations that authorize immigration authorities to release a noncitizen on her own recognizance require that the noncitizen "demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons" and that the noncitizen is "likely to appear for any future proceeding." 8 C.F.R. § 1236.1(c)(8). "Release [therefore] reflects a determination by the Government that the noncitizen is not a danger to the community or a flight risk." Saravia v. Sessions, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017), aff'd sub nom. Saravia for A.H. v. Sessions, 905 F.3d 1137 (9th Cir. 2018).

On October 8, 2025, Petitioner was detained at a routine ICE check-in. (Doc. 1 at ¶ 2.) Petitioner has been detained since then at the California City Detention Facility.

## II.    JURISDICTION AND LEGAL STANDARD

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." Hamdi v. Rumsfeld, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). A district court may grant a writ of habeas corpus when the Petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "[D]istrict courts retain jurisdiction under 28 U.S.C. § 2241 to consider habeas challenges to immigration detention that are sufficiently independent of the merits of [a] removal order." Lopez-Marroquin v. Barr, 955 F.3d 759, 759 (9th Cir. 2020) (citing Singh v. Holder, 638 F.3d 1196, 1211–12 (9th Cir. 2011)).

## III.    DISCUSSION

Civil immigration detention is typically justified only when a noncitizen presents a risk of flight or danger to the community.  See Zadvydas v. Davis, 533 U.S. 678, 690 (2001); Padilla v. ICE, 704 F. Supp. 3d 1163, 1172 (W.D. Wash. 2023).  Petitioner contends that the Due Process Clause bars the Government from re-detaining her without first providing a hearing where it must prove she is a flight risk or danger.  (Doc. 1 at 5-24.)  In their response to the petition, Respondents do not contend that the Government made an evidence-based determination that Petitioner was a danger, or a flight risk, or that she had violated her conditions of release.  Nor do they allege that Petitioner had committed a crime or that they had otherwise made a determination that Petitioner was dangerous. Instead, Respondents urge the Court to adopt reasoning consistent with the new DHS guidance—that Petitioner's recent re-detention is mandatory under section 1225(b).  Accordingly, before turning to the standard due process analysis, the Court will address the threshold matter of whether Petitioner's re-detention is properly understood to be authorized by section 1225(b) as Respondents contend or under section 1226(a) as Petitioner contends.

When first presented with the Government's new interpretation of section 1225(b)(2)(A), some courts described this read of the statute as "novel."  See, e.g., Barrera v. Tindall, No. 3:25-CV-541-RGJ, 2025 WL 2690565, at *5 (W.D. Ky. Sept. 19, 2025).  Since then, this interpretation has been

3

almost universally rejected by district courts throughout the country, including this Court. Valencia v. Chestnut, 2025 WL 3205133, at *2 (E.D. Cal. Nov. 17, 2025) (noting that "[h]ere in the Eastern District of California, recent decisions have largely rejected the government's interpretation of Section 1225(b)(2) as applicable to all 'applicants for admission,'" recognizing "[o]ther district courts have also reached the result that Section 1226(a), not Section 1225(b)(2), provides the appropriate framework for noncitizens already residing in the United States," and collecting cases). As it has done on previous occasions, this Court will follow the majority approach in finding that "Respondents' proposed interpretation of the statute (1) disregards the plain meaning of section 1225(b)(2)(A); (2) disregards the relationship between sections 1225 and 1226; (3) would render a recent amendment to section 1226(c) superfluous; and (4) is inconsistent with decades of prior statutory interpretation and practice." Sharan S. v. Chestnut, No. 1:25-cv-01427-KES-SKO (HC), 2025 WL 3167826, at *5 (E.D. Cal. Nov. 12, 2025). Consistent with the overwhelming consensus rejecting Respondents' interpretation of section 1225(b)(2)(A), this Court concludes that section 1226(a), not section 1225(b)(2)(A), authorizes and dictates Respondents' authority to re-detain Petitioner.

The Court next turns to the analysis of Petitioner's due process claim. Due process claims are analyzed "in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution." Garcia v. Andrews, No. 2:25-cv-01884-TLN-SCR, 2025 WL 1927596, at *2 (E.D. Cal. July 14, 2025) (citing Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 460 (1989)).

**A. Petitioner Possesses a Protected Liberty Interest.**

A protected liberty interest may arise from a conditional release from physical restraint. Young v. Harper, 520 U.S. 143, 147–49 (1997). Even when a statute allows the Government to arrest and detain an individual, a protected liberty interest under the Due Process Clause may entitle the individual to procedural protections not found in the statute. See id. (due process requires pre-deprivation hearing before revocation of preparole); Gagnon v. Scarpelli, 411 U.S. 778, 782 (1973) (same, in probation context); Morrissey v. Brewer, 408 U.S. 471, 482 (1972) (same, in parole context). To determine whether a specific conditional release rises to the level of a protected liberty interest,

4

"[c]ourts have resolved the issue by comparing the specific conditional release in the case before them with the liberty interest in parole as characterized by Morrissey." Gonzalez-Fuentes v. Molina, 607 F.3d 864, 887 (1st Cir. 2010) (internal quotation marks and citation omitted).

In Morrissey, the Supreme Court explained that parole "enables [the parolee] to do a wide range of things open to persons" who have never been in custody or convicted of any crime, including to live at home, work, and "be with family and friends and to form the other enduring attachments of normal life." Morrissey, 408 U.S. at 482. "Though the [Government] properly subjects [the parolee] to many restrictions not applicable to other citizens," such as monitoring, her "condition is very different from that of confinement in a prison." Id. "The parolee has relied on at least an implicit promise that parole will be revoked only if she fails to live up to the parole conditions." Id. The revocation of parole undoubtedly "inflicts a grievous loss on the parolee." Id. (quotations omitted). Therefore, a parolee possesses a protected interest in her "continued liberty." Id. at 481–84.

Immigration officials' September 2022 release of Petitioner on her own recognizance pending her immigration proceedings was similar, in that it allowed her to live in the country subject to supervision, but outside of custody, for the past 3 years. And that time inherently allowed Petitioner to form "enduring attachments of normal life." Id. at 482. The Court concludes that Petitioner's original release and time out of custody gave rise to a constitutionally protective liberty interest.

Because the Court concludes that Petitioner has a protected liberty interest in her release, see Guillermo M. R. v. Kaiser, No. 25-CV-05436-RFL, 2025 WL 1983677, at *4 (N.D. Cal. July 17, 2025) (recognizing that "the liberty interest that arises upon release [from immigration detention] is inherent in the Due Process Clause"); Ortega v. Kaiser, No. 25-cv-05259-JST, 2025 WL 1771438, at *3 (N.D. Cal. June 26, 2025) (collecting cases finding that noncitizens who have been released have a strong liberty interest), the Court proceeds to determine what process is due before the Government may terminate Petitioner's liberty.

//

//

//

//

### B. The Mathews Factors Demonstrate Petitioner is Entitled to a Pre-Deprivation Hearing

Due process "is a flexible concept that varies with the particular situation." Zinermon v. Burch, 494 U.S. 113, 127 (1990). The procedural protections required in a given situation may be evaluated using the Mathews v. Eldridge factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

Id. (quoting Mathews v. Eldridge, 424 U.S. 319, 335 (1976)); see Hernandez v. Sessions, 872 F.3d 976, 993 (9th Cir. 2017) (applying Mathews factors in immigration detention context).

Turning to the first factor, Petitioner has a significant private interest in remaining free from detention. "Freedom from imprisonment—from Government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." Zadvydas v. Davis, 533 U.S. 678, 690 (2001). Petitioner had been out of custody for the past 3 years, and during that time, she has lived, worked, and developed ties in the community. Petitioner's detention denies her that freedom.

Second, "the risk of an erroneous deprivation [of liberty] is high" where, as here, "[the Petitioner] has not received any bond or custody redetermination hearing." A.E. v. Andrews, No. 1:25-cv-00107-KES-SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025). Civil immigration detention, which is "nonpunitive in purpose and effect[,]" is justified when a noncitizen presents a risk of flight or danger to the community. See Zadvydas, 533 U.S. at 690; Padilla, 704 F. Supp. 3d at 1172. Petitioner has no criminal history, nor do Respondents allege she is a flight risk or danger to the community. Given the absence of any procedural safeguards to determine if her detention was justified, "the probable value of additional procedural safeguards, i.e., a bond hearing, is high." A.E., 2025 WL 1424382, at *5.

Third, although the Government has a strong interest in enforcing the immigration laws, the Government's interest in re-detaining Petitioner without a hearing is "low." Ortega v. Bonnar, 415 F.

6

Supp. 3d 963, 970 (N.D. Cal. 2019); Doe v. Becerra, No. 2:25-cv-00647-DJC-DMC, 2025 WL 691664, at *6 (E.D. Cal. March 3, 2025).  In immigration court, custody hearings are routine and impose a "minimal" cost.  Doe, 2025 WL 691664, at *6.  "If the Government wishes to re-arrest [Petitioner] at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low."  Ortega, 415 F. Supp. 3d at 970.

On balance, the Mathews factors show that *before* Respondents could lawfully re-detain Petitioner, she was entitled to a bond hearing.  "'[T]he root requirement' of the Due Process Clause" is "that an individual be given an opportunity for a hearing *before* [s]he is deprived of any significant protected interest."  Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542 (1985) (quoting Boddie v. Connecticut, 401 U.S. 371, 379 (1971)); see Zinermon, 494 U.S. at 127 ("[a]pplying [the Mathews] test, the Court usually has held that the Constitution requires some kind of a hearing *before* the State deprives a person of liberty").  And consistent with the numerous decisions of other courts in this circuit who have ruled on this issue, at such a hearing the burden would be on the Government to prove that Petitioner is a flight risk or danger to the community by clear and convincing evidence. See, e.g., Ramirez Clavijo v. Kaiser, No. 25-CV-06248-BLF, 2025 WL 2419263, at *4–6 (N.D. Cal. Aug. 21, 2025) (reaching the same conclusion); Garcia, 2025 WL 1927596, at *5 (same); Pinchi v. Noem, No. 25-CV-05632-RMI (RFL), 2025 WL 1853763, at *1 (N.D. Cal. July 4, 2025) (same); Ortega, 415 F. Supp. 3d at 970 (same); Doe, 2025 WL 691664, at *6 (same); Diaz v. Kaiser, No. 3:25-cv-05071, 2025 WL 1676854, at *2 (N.D. Cal. June 14, 2025) (same); Romero v. Kaiser, No. 22-cv-02508-TSH, 2022 WL 1443250, at *4 (N.D. Cal. May 6, 2022) (same); Vargas v. Jennings, No. 20-cv-5785-PJH, 2020 WL 5074312, at *4 (N.D. Cal. Aug. 23, 2020) (same). Accordingly, Petitioner's detention is in violation of the Due Process Clause of the Fifth Amendment.

IV.    **CONCLUSION & RECOMMENDATION**

Based on the foregoing, the Court concludes that Respondents violated Petitioner's due process rights when they re-detained Petitioner without first having conducted a pre-deprivation hearing before a neutral arbiter where the Government established that Petitioner was a flight risk or danger to the community such that her physical custody was legally justified. Accordingly, the Court hereby RECOMMENDS that the petition be GRANTED, Petitioner be released from detention, and

Respondents be enjoined from re-detaining Petitioner unless her re-detention is ordered at a custody hearing before a neutral arbiter where the government bears the burden of proving, by clear and convincing evidence, that Petitioner presents a flight risk or danger to the community.

This Findings and Recommendation is submitted to the United States District Court Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California.  Within ten (10) days after being served with a copy of this Findings and Recommendation, a party may file written objections with the Court and serve a copy on all parties. Id. The document should be captioned, "Objections to Magistrate Judge's Findings and Recommendation" and shall not exceed fifteen (15) pages, except by leave of court with good cause shown. The Court will not consider exhibits attached to the Objections. To the extent a party wishes to refer to any exhibit(s), the party should reference the exhibit in the record by its CM/ECF document and page number, when possible, or otherwise reference the exhibit with specificity. Any pages filed in excess of the fifteen (15) page limitation may be disregarded by the District Judge when reviewing these Findings and Recommendations pursuant to 28 U.S.C. § 636 (b)(1)(C).  The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014).

IT IS SO ORDERED.

Dated:    **February 2, 2026**                                  /s/ *Sheila K. Oberto*
                                                      UNITED STATES MAGISTRATE JUDGE